# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIDA BARRIOS, | ) 1:09-cv-01100 GSA |
| | ) |
| | ) ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **BACKGROUND**

Plaintiff Aida Barrios ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

///

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8 and 9.)

1

**FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff protectively filed an application for disability insurance benefits on May 13, 2004, alleging disability beginning August 15, 2003, involving cellulitis, neuropathy and depression. (AR 86.) Plaintiff's application was denied initially, upon reconsideration, and by an Administrative Law Judge ("ALJ") following a hearing. (AR 55-60, 79-83, 86-91.)

On April 27, 2007, the Appeals Council granted Plaintiff's request for review of the ALJ's decision, pursuant to the substantial evidence provision of Title 20 of the Code of Federal Regulations section 416.1470, and ultimately remanded the case back to the ALJ. (AR 64-66.) The Appeals Council stated

> The [ALJ] indicated that Dr. Damania concluded that the claimant can perform simple repetitive tasks. Actually, Dr. Damania concluded that the claimant can perform simple one and two step job instructions. Dr. Damania's conclusion that the claimant is limited to one and two step job instructions is more restrictive than the [ALJ]'s findings that the claimant can perform simple repetitive tasks. Although he found that the claimant can perform simple repetitive tasks, the [ALJ] did not evaluate the claimant's mental impairment and provide rationale as to how he reached the mental residual functional capacity found. Therefore, further consideration and evaluation of Dr. Damania's opinion and the claimants mental impairment are warranted.

(AR 65.) On remand, the Appeals Council directed the ALJ to: (1) give further consideration to the examining source opinion in accordance with Title 20 of the Code of Federal Regulations section 416.927 and Social Security Rulings ("SSR") 96-2p and 96-5p, and explain the weight given to such opinion evidence; (2) further evaluate the claimant's mental impairment in accordance to Title 20 of the Code of Federal Regulations section 416.920(a); (3) evaluate claimant's obesity pursuant to SSR 02-01p; and (4) obtain supplemental evidence from a vocational expert ("VE"). (AR 65-66.) The remand request directing the ALJ to obtain supplemental evidence from the VE specifically included instructions to: (a) clarify the effect of the assessed limitations on the claimant's occupational base; (b) frame the hypothetical questions to reflect the specific capacity/limitations established by the record as a whole; (c) ask the VE to identify examples of appropriate jobs and to state the incidence of such jobs in the national

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

economy; and (d) to identify any conflicts between the occupational evidence provided by the VE and the information in the Dictionary of Occupational Titles ("DOT") and its companion publication, the Selected Characteristics of Occupations before relying on evidence obtained from the VE. (AR 66.)

In accordance with the Appeals Council's remand instruction, on January 6, 2009, ALJ Michael J. Haubner held a hearing, and issued an order regarding benefits on February 4, 2009, finding Plaintiff had not been under a disability, as defined by the Social Security Act, since May 13, 2004. (AR 26.) On March 25, 2009, the Appeals Council denied review. (AR 6-8.)

**Hearing Testimony of January 6, 2009**

On January 6, 2009, in Fresno, California, ALJ Haubner held a second hearing in accordance with the directive from the Appeals Council. (AR 669-709.) Plaintiff's attorney, Geoffrey Hayden, was in attendance. (AR 670.) During the hearing, the ALJ elicited testimony from Plaintiff, VE Thomas Dachelet, and Plaintiff's daughter, Linda Gonzales. (AR 667-709.) The entire hearing testimony of January 6, 2009, was reviewed by the Court. Only those portions relevant to the issues on appeal are summarized below. Otherwise, the testimonial evidence will be referenced as necessary in this Court's decision.

*Thomas Dachelet, Vocational Expert*

VE Dachelet was initially requested by the ALJ to review the Plaintiff's work history and testify regarding Plaintiff's past relevant work. (AR 680). He determined that Plaintiff's work history did not include past relevant work, and the ALJ concurred, finding that Plaintiff's earnings record was consistent with the VE's opinion. *Id*. Having identified that Plaintiff had no past relevant work, the ALJ moved on to proposing several hypotheticals to the VE. *Id*.

First, the VE was asked to assume that for all the hypotheticals posed, the hypothetical worker would be identical to Plaintiff in age, education, language and experience background. *Id*. The ALJ then posed his first hypothetical, and asked the VE if this first hypothetical person could do other work assuming that the person: could lift and carry twenty pounds occasionally, ten pounds frequently; could stand and walk at least two hours out of eight; could sit six hours out of eight; could push and pull with the upper extremities without limitation, but had limited

1  ability to do so with the lower extremities; should avoid foot controls with the left lower
2  extremity; could never use ladders, ropes, or scaffolds; could occasionally climb ramps and
3  stairs; and could occasionally balance, stoop, kneel, crouch, and crawl.  (AR 680-681.)  The VE
4  responded that given the stand/walk limitation of only two hours out of eight total, "I'd drop the
5  full world of sedentary unskilled, Your Honor."  (AR 681.)  Given this, the ALJ then asked "[s]o,
6  the GRID's apply for that?"  *Id*.  "Yes," responded the VE.  *Id*.

7  The ALJ then proposed a second hypothetical, in which the hypothetical person was
8  restricted to the following exertional limitations: the individual could lift and carry twenty
9  pounds occasionally and frequently; could stand and walk at least two hours out of eight; could
10  push and pull without limitation; and could occasionally climb, balance, stoop, kneel, crouch,
11  and crawl.  (AR 681.)  Considering these limitations, the VE stated "[w]ell, it's the same
12  response to hypothetical one, Your Honor."  *Id*.

13  The third hypothetical proposed by the ALJ was based on the opinion of internist Steven
14  Stoliz, M.D.  (AR 681-682.)  In this hypothetical, the VE was asked to assume the hypothetical
15  individual: could lift up to ten pounds, but could not carry ten pounds due to difficulty walking;
16  could sit without restriction; stand and/or walk thirty minutes at a time before needing to take a
17  short rest break, and cumulatively do so for four hours out of an eight-hour day; did not require a
18  cane to ambulate; could use her hands without restriction; could use her right foot for operation
19  of foot controls, but could not use her left foot to do so; could occasionally climb stairs and
20  ramps, but not ladders or scaffolds; and did not have any hearing or visual impairments.  (AR
21  682.)  In light of these limitations, the VE testified that the hypothetical worker could not
22  perform any other work.  (AR 683.)

23  In the ALJ's fourth hypothetical, the VE was asked to assume the following non-
24  exertional limitations: the individual could understand, carry out, and remember "simple one-and
25  two-step instructions in an unskilled setting;" could respond appropriately to coworkers,
26  supervisors, and the public; could respond appropriately to usual work situations and deal with
27  changes in a routine work setting with normal supervision.  (AR 683-684.)  The VE responded
28  "[t]he full world of unskilled is simple one-and two-step . . . without regard to exertional."  (AR

4

1  684.) The ALJ then stated "Okay . . . [s]o, the entire world of unskilled work at all exertion
2  levels, and the GRID's would apply?" *Id*. The VE responded affirmatively. *Id*.
3        The ALJ then proposed combining hypothetical four to the previous three hypotheticals.
4  (AR 684.) First, the ALJ combined hypotheticals one and four, and asked the VE if the same
5  result from hypothetical one would still apply. *Id*. "Yes," responded the VE. *Id*. Then, the ALJ
6  proposed combining hypotheticals two and four, to which the VE stated that the same result from
7  hypothetical one would still apply. *Id*. Finally, the ALJ proposed combining hypotheticals three
8  and four; this combination resulted in no work being available to the hypothetical worker. *Id*.
9        Moving on, the ALJ then proposed a fifth hypothetical which was based on the Plaintiff's
10  testimony. (AR 684-685.) This hypothetical included the following limitations: the individual
11  could lift and carry five to ten pounds, uses a cane continuously, could sit for twenty minutes at a
12  time, could stand for five to ten minutes at a time, needed a one-hour unscheduled break per day,
13  could concentrate thirty minutes at a time, and could walk a half-mile at a time. *Id*. The VE
14  responded that such a hypothetical worker would be incapable of any work. (AR 685.)
15        Following this exchange, the ALJ directed his attention to Plaintiff's counsel and asked
16  "any additional questions for the vocational expert or the claimant." (AR 686.) Plaintiff's
17  counsel then responded "[n]o, Your Honor." *Id*.
18  **Medical Record**
19        The entire medical record was reviewed by the Court. As the issues on appeal primarily
20  concern the testimony of the Vocational Expert, and do not invoke the Plaintiff's medical record,
21  the medical evidence will only be referenced as necessary to the Court's decision.
22  **ALJ's Findings**
23        Using the Social Security Administration's five-step sequential evaluation process, the
24  ALJ determined that Plaintiff did not meet the disability standard. (AR 16-26, *see also* 20 C.F.R.
25  § 404.1520.) The ALJ found that Plaintiff had not engaged in substantial gainful activity since
26  May 13, 2004. (AR 18.) The ALJ, relying primarily on the medical records of Carlos Bautista,
27  M.D., and psychiatrist Shireen Damania, M.D., identified the following severe impairments:
28  degenerative changes in the left knee, obesity, a history of left leg cellulitis; status post left leg

stasis ulcer; an adjustment disorder with depressed mood, and alcohol and polysubstance abuse in remission. (AR 18.) Nonetheless, the ALJ determined that the Plaintiff's impairments do not, individually or in combination, meet or equal any of the listed medical impairments. (AR 19.)

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to:

> lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk 2 hours and sit 6 hours in an 8-hour workday. She should avoid operation of foot controls with the left lower extremity due to leg pain, but can occasionally climb, balance, stoop, kneel, crouch, and crawl. Additionally, claimant is able to understand, carry out and remember simple one and two step job instructions in an unskilled setting; respond appropriately to coworkers, supervisors and the public; respond appropriately to usual work situations, and deal with changes in a routine work setting with normal supervision.

(AR 20-21.) This Court takes note that the ALJ's RFC determination is based on a combination of hypotheticals one and four.

Next, the ALJ determined that Plaintiff had no past relevant work. The ALJ did, however, find that there were other jobs available in the national economy that Plaintiff could perform considering her age, education, work experience, and RFC. (AR 25.) The ALJ reasoned that:

> If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.24. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of the full world of sedentary unskilled jobs, and thus all the sedentary, unskilled jobs contemplated by the Medical Vocational Guidelines are available to such a person.
> Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
> Based on Mr. Dachelet's testimony, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(AR 25-26.)

///

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) was unable to perform her past relevant work; yet (5) retained the residual functional capacity (RFC) to perform other jobs that exist in significant numbers in the national economy. AR 15-20.

Here, Plaintiff's argues for remand based on the ALJ's failure to first resolve an alleged conflict between the Dictionary of Occupational Titles ("DOT") and the VE's testimony prior to relying on said testimony to justify his "not disabled" determination at step five of the sequential disability evaluation process. (Doc. 11 at 8, 10.) Plaintiff further pleads for remand based on the VE's failure to identify specific jobs, and there number in the national economy, at Reasoning Level 1. *Id*.

## DISCUSSION

### A.   *Conflict Between The DOT And The Testimony Of The Vocational Expert*

As stated above, Plaintiff's contends that the ALJ committed legal error by failing to resolve a conflict between the DOT and the VE's testimony prior to relying on the VE's testimony to make his disability determination. (Doc. 11 at 8.) In response, Defendant stipulates that Plaintiff is procedurally correct in stating the ALJ is required to ask the VE whether his testimony is in conflict with the DOT and, if so, he must resolve any conflicts. (Doc. 14 at 3.) Defendant asserts, however, that the error is harmless if there is no conflict, and while "the ALJ did not ask the [VE] whether his testimony was in conflict with the DOT, . . . Plaintiff identifies no conflict thus the ALJ's error [was] harmless." *Id*.

The foundation upon which Plaintiff has constructed her argument is Social Security Ruling ("SSR") 00-4p, which states "before relying on VE . . . evidence to support a disability determination . . . [the ALJ] must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the [DOT] . . . and

[e]xplain in the determination or decision how any conflict that has been identified was resolved." In other words, when the ALJ is presented with an apparent unresolved conflict between VE evidence and the DOT, neither piece of evidence trumps the other, "the [ALJ] must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provide[] a basis for relying on the VE testimony rather than on the DOT information." SSR 00-04p, *2. Given this foundational understanding, the Court will now address those cases cited by the parties.

### 1. A Tale of Two Conflicts: *Massachi* or *Meissl*

Plaintiff's argument places significant reliance on *Massachi v. Astrue,* 486 F.3d 1149 (9th Cir. 2007)[3]. (Doc. 11 at 8-10.) Defendant, in turn, cites to *Meissl v. Barnhart*, 403 F.Supp.2d 981, 984 (C.D. Cal. 2005) as its primary authority. (Doc. 14 at 4-5.) *Massachi* involved an apparent conflict between the DOT and the VE's testimony that a worker of Massachi's age and education, who was limited to simple tasks because of various cognitive impairments, could perform other entry-level work such as janitorial and cleaning jobs. *Massachi,* 486 F.3d at 1151, 1154 n.18. The ALJ did not ask the VE whether her testimony was in conflict with the DOT. *Massachi,* 486 F.3d at 1152.

The "Social Security Administration relies primarily on the [DOT] for information about the requirements of work in the national economy. . . [and] also uses testimony from [VEs] to obtain occupational evidence." *Massachi,* 486 F.3d at 1153 (internal quotations omitted). Citing to SSR 00-04p, the *Massachi* court reiterated the ALJ's "*affirmative responsibility* to ask about any possible conflict between . . . evidence [provided by the VE] and information provided in the DOT." *Id*. (emphasis in original). The policy behind this procedural requirement was to ensure a clear record explaining why testimony provided by a VE was relied on, particularly in cases involving conflicts. *Id*. The court, however, also recognized that the procedural error could have been harmless if "no conflict existed, or if the [VE] had provided sufficient support for her

---

[3] Plaintiff also attempts to draw support from *Meanl v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999). The Court, however, finds *Meanl* to be unpersuasive. In sum, *Meanl*, like *Massachi*, had an apparent conflict between the DOT and the VE's testimony concerning the requirements of specific jobs that were deemed other work available to the claimant. Like *Massachi*, this factual setting is clearly distinguishable from the present case.

conclusion so as to justify any potential conflicts." *Massachi,* 486 F.3d at 1153-1154 n. 19. Thus, the court reasoned because the ALJ failed to ask the VE whether her testimony conflicted with the DOT in light of an apparent conflict concerning Massachi's job requirements, the case required remand. *Massachi,* 486 F.3d at 1154. The *Massachi* court instructed the ALJ to determine whether the job requirements identified by the VE were consistent with Massachi's limitations and the definitions in the DOT, or whether a reasonable explanation for any inconsistencies existed. *Massachi,* 486 F.3d at 1155.

Plaintiff attempts to draw a parallel between the present case and *Massachi* by arguing that "the vocational expert's testimony conflicts with the DOT in that the ALJ limited [Plaintiff] to performing jobs that only require simple 1 and 2 step directions and not just 'unskilled' work." (Doc. 11 at 9.) Plaintiff supports this position by identifying the DOT Reasoning Levels One and Two, which respectively distinguish between an ability to carry out "*simple* one- or two-step instructions" and "*detailed* but uninvolved written or oral instructions." *Id* (emphasis in original). Plaintiff then explains, without citing to any particular authority, that while the DOT lists 207 unskilled sedentary jobs at Reasoning Levels One and Two, Plaintiff can only perform forty-six of the 207 unskilled sedentary jobs because, as the noted by ALJ, Plaintiff is limited to only those positions involving simple one- and two-step instructions. (Doc. 11 at 9-10.) The Court finds Plaintiff's argument unpersuasive.

First, Plaintiff fails to reconcile the clear distinction between *Massachi* and the instant case. *Massachi's* conflict between the DOT and the VE's testimony involved the requirements of specific jobs which the claimant was deemed capable of performing. *Massachi,* 486 F.3d at 1153. This type of conflict strikes at the very core of the Social Security regulations rationale for using and relying on the DOT. *Id*. In contrast, the conflict identified by Plaintiff here is largely semantic, involving terms and phrases that are not entirely inapposite, but rather differ by a matter of degree. Moreover, the alleged conflict stems from the characterization of reasoning levels as they apply to entire job categories (i.e., the impact of a simple one- and two-step instruction limitation on the category of unskilled sedentary work versus the impact of a detailed but uninvolved instruction limitation on the same category), rather than, as in *Massachi*, a

specific conflict between the DOT and VE's testimony involving the requirements relevant to Plaintiff. *Massachi,* 486 F.3d at 1153. Furthermore, Plaintiff's conflict allegation is largely unsubstantiated, as Plaintiff cites no authority which recognizes apparent or potential conflicts arising from situations involving varying semantics. (Doc. 11 at 9.) While a strict interpretation of SSR 00-04p and *Massachi v. Astrue,* 486 F.3d 1149 could superficially permit one to interpret the present circumstances as conflicting, the Court's task is to delve deeper into the analysis. Thus, given the complete absence of legal authority supporting remand in situations involving the type of conflict presented by Plaintiff, and the clear factual difference between the conflict in *Massachi* and conflict alleged by Plaintiff, this Court finds *Massachi* to be insufficient to warrant granting Plaintiff's requested relief.

Tellingly, Plaintiff fails to address the holding of *Meissl,* 403 F.Supp.2d at 984 which, as Defendant correctly observes, has been consistently relied on by this very Court – for over two years – when addressing conflicts involving reasoning levels.[4] In *Meissl*, the Central District of California held that a limitation to simple and repetitive tasks was consistent with level two reasoning positions as provided for in the DOT. *Meissl*, 403 F.Supp.2d at 984-985. In that case, the claimant was limited to "simple tasks performed at a routine or repetitive pace." *Meissl*, 403 F.Supp.2d at 982. The court explained that while the Social Security regulations provided only two categories of abilities with regard to understanding and remembering instructions - "short and simple" and "detailed" or "complex" - the DOT has six gradations for measuring that ability. *Meissl*, 403 F.Supp.2d at 984. The *Meissl* court held that to

> equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

*Meissl v. Barnhart*, 403 F.Supp.2d at 984. Moreover, in rejecting the "neat, one-to-one parallel" that Missel attempted to draw between the DOT and the SSR, the court reasoned that DOT's use

---

[4] *See Moua v. Astrue*, 2009 WL 997104, *12-13 (E.D. Cal. April 14, 2009) (Rather than adhere to a strict construction of what this limitation equates to in terms of reasoning level, this [C]ourt prefers to follow the well developed reasoning of the Central District in *Meissl*.); *see also Angulo v. Astrue*, 2009 WL 817506, *6, 11-12 (E.D. Cal. March, 27, 2009); *Isaac v. Astrue*, 2008 WL 2875879, *3-4 (E.D. Cal. July 24, 2008).

11

of the term "uninvolved" qualified the term "detailed" and refuted any attempt to equate identical meanings between the SSR's use of the term "detailed" and its use in the DOT. *Id.*

In the present case, the ALJ combined hypotheticals one and four to derive his RFC determination. (AR 20-21, 680, 683-684.) The RFC determination included the non-exertional limitation of "simple one- and two step instructions in an unskilled setting." (AR 21, 683-684.) As Plaintiff correctly notes, the VE's response to the combined hypothetical indicated that the "full world of sedentary unskilled" work was available to Plaintiff. (AR 26, 681, 684.) However, this Court does not find, as Plaintiff proposes, that the ALJ's finding that Plaintiff can perform "simple one- and two step instructions in an unskilled setting" inherently conflicts with the DOT's finely-tuned calibration which teases out the subtle difference between Reasoning Level One's "simple" instructions, and Reasoning Level Two's "detailed but uninvolved" instructions.[5] Given the lack of an inherent or apparent conflict, and Plaintiff's inability to bring to this Court's attention any authority that documents reasoning level-type conflicts similar to the one at issue here, this Court finds that the ALJ's failure to explicitly inquire about potential conflicts between the DOT and VE's testimony, as mandated by SSR 00-04p, constituted at most harmless error because there was no conflict that required resolution given the non-exertional limitation to "simple one- and two- step instructions" does not inherently preclude or conflict with performance of jobs which the DOT identifies as Reasoning Level Two. *Massachi*, 486 F.3d at 1154 n. 19; *Meissl*, 403 F.Supp.2d at 984. Thus, Plaintiff's prayer for remand is not warranted.

**2.    Any Error Was Harmless And Caused No Prejudice**

Unfortunately, even if one were to assume, arguendo, that Plaintiff were correct in her assertion of legal error, she still falls short of demonstrating how that error is more than harmless or constitutes prejudice against her – especially in light of her own assertion that forty-six

---

[5] Interestingly, the ALJ states in his February 4, 2009, decision that "[p]ursuant to SSR 00-04p, the [VE's] testimony is consistent with the information contained in the [DOT]. This statement clearly demonstrates that while the ALJ was cognizant of his obligation to resolve potential conflicts, no conflict, whether apparent, inherent, or potential, was present. Thus, there was no reason for the ALJ to inquire about conflicts because neither he, the VE, nor Plaintiff's counsel perceived any conflict. (AR 26, 680-686.)

12

different positions at Reasoning Level One are available to her. (Doc. 11 at 9-10); *Massachi,* 486 F.3d at 1153-1154 n. 19; *see also Corday v. Astrue*, 2010 WL 2608331, *9 (D. Or. March 3, 2010) (citing *Shinseki v. Sanders*, 129 S.Ct. 1696, 1706 (2009)). Following her argument to its natural conclusion would leave this Court in the odd position of ordering a case remanded for further hearing to clarify a semantic conflict despite the fact that the end result would remain unchanged based in part on Plaintiff's own assertions. (Doc. 11 at 9-10.)

As stated above, procedural errors like the one at issue here are subject to a finding of harmless error when there is no conflict or if the VE provides sufficient support for her conclusions so as to justify any potential conflicts. *Massachi*, 486 F.3d at 1154 n. 19.

Moreover, remand of an agency determination based on legal error requires Plaintiff to demonstrate resulting prejudice. *Corday*, 2010 WL 2608331, *9 (citing *Shinseki*, 129 S.Ct. at 1706)**.** The lack of prejudice imposed as a result of the ALJ's failure to explicitly call for the VE testimony regarding conflicts is demonstrated by the same facts and logic that support a finding that the error, if any, was harmless. However, to reiterate the point, this Court finds that no prejudice resulted from the absence of the ALJ's inquiry into conflicts between the DOT and VE's testimony because it is highly likely that even if Plaintiff's assertion that a simple one- and two- step instructional limitation did mandate only those jobs identified by the DOT at Reasoning Level One, there are forty-six different positions at Reasoning Level One which Plaintiff admits are available to her. (Doc. 11 at 9-10) Thus, even if this Court decided to remand the case back to the ALJ for further hearing, the end result would remain unchanged.

Finally, in a single sentence, Plaintiff raises the argument that the ALJ must identify specific jobs available to her at Reasoning Level One and the number of jobs available in the local or regional economy. (Doc. 11 at 10.) This Court finds this argument lacking persuasion, particularly in light of the fact that Plaintiff has proposed no argument that the determination was not supported by substantial evidence. While the Plaintiff may be technically correct, the ALJ and VE did clearly state that the "entire world of sedentary unskilled work" was available to her, and absent any arguments to the contrary, this Court finds that substantial evidence supported the determination. *Angulo v. Astrue*, 2009 WL 817506, *8-11 (E.D. Cal. March 27, 2009); (AR 26,

680-685). Thus, under the circumstances, while the ALJ did fail to explicitly obtain from the VE the name and availability of every position encompassed in "the entire world of sedentary unskilled work" the error was, at most, harmless given Plaintiff's admission that other work was available to her; specifically, the forty-six positions which Plaintiff identified herself would only result in the ALJ arriving at the same conclusion: Plaintiff is not disabled because there is other work available to her. (AR 26, 680-685)

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Aida Barrios.

IT IS SO ORDERED.

Dated: **September 28, 2010**         **/s/ Gary S. Austin**
                                       UNITED STATES MAGISTRATE JUDGE